**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| ELAINE WANG, | : |
| | : |
| Plaintiff, | : Civil Action No. 1:21-cv-3779 |
| | : |
| v. | : |
| | : **COMPLAINT FOR VIOLATIONS OF** |
| TRIBUNE PUBLISHING COMPANY, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| PHILIP G. FRANKLIN, RICHARD RECK, | : **SECURITIES EXCHANGE ACT OF** |
| CAROL CRENSHAW, CHRISTOPHER | : **1934** |
| MINNETIAN, DANA GOLDSMITH | : |
| NEEDLEMAN, TERRY JIMENEZ, and | : **JURY TRIAL DEMANDED** |
| RANDALL D. SMITH, | : |
| | : |
| Defendants. | : |

---

Elaine Wang ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1. This is an action brought by Plaintiff against Tribune Publishing Company ("Tribune or the "Company") and the members Tribune board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), in connection with the proposed acquisition of Tribune by affiliates of Alden Global Opportunities Master Fund, L.P. (herein referred to as the "Alden").

2. Defendants have violated the above-referenced Sections of the Exchange Act by causing a materially incomplete and misleading Definitive Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on April 20, 2021 with the United States Securities and Exchange

Commission ("SEC") and disseminated to Company stockholders. The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Tribune Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Tribune Enterprises, LLC, a Delaware limited liability company owned by Alden and formed solely for the purpose of entering into the Merger Agreement ("Parent"), will merge with and into Tribune with Tribune surviving the merger as a wholly owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Tribune common share issued and outstanding will be converted into the right to receive $17.25 in cash (the "Merger Consideration").

3. As discussed below, Defendants have asked Tribune stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act. Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the Company's financial forecasts and financial analyses conducted by the financial advisor of the Company, Lazard Frères & Co. LLC ("Lazard") in support of its fairness opinion, and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

4. It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tribune stockholders or, in the event the

Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7. Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, Alden is headquartered in this District and because the closing on the Merger will take place in this District.

## PARTIES

9. Plaintiff is, and has been at all relevant times, the owner of Tribune common stock and has held such stock since prior to the wrongs complained of herein.

10. Individual Defendant Philip G. Franklin has served as a member of the Board since August 2014 and is the Chairman of the Board.

11. Individual Defendant Richard Reck has served as a member of the Board since April 2016.

12. Individual Defendant Carol Crenshaw has served as a member of the Board since April 2016.

13. Individual Defendant Christopher Minnetian has served as a member of the Board since December 2019.

14. Individual Defendant Dana Goldsmith Needleman has served as a member of the Board since December 2019.

15. Individual Defendant Terry Jimenez has served as a member of the Board, and as the Company's Chief Executive Officer and President since April 2016.

16. Individual Defendant Randall D. Smith has served as a member of the Board since 2020 and is also Alden's co-founder.

17. Defendant Tribune is incorporated in Delaware and maintains its principal offices at 560 W. Grand Avenue, Chicago, IL 60654. The Company's common stock trades on the New York Stock Exchange under the symbol "TPCO."

18. The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19. The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.   The Proposed Transaction**

20. Tribune, a media company, publishes newspapers worldwide. It publishes daily newspapers, weekly newspapers, and niche publications and direct mail. The company also provides various digital marketing services, which include the development of mobile websites, search engine marketing and optimization, social media account management, and content marketing for its customers' web presence for small to medium size businesses. In addition, it operates Tribune Content Agency, a syndication and licensing business that provides content solutions for publishers. Tribune Publishing Company operates media businesses in eight markets

with titles, including the Chicago Tribune, New York Daily News, The Baltimore Sun, Hartford Courant, South Florida's Sun Sentinel, Orlando Sentinel, Virginia's Daily Press and The Virginian-Pilot, and The Morning Call of Lehigh Valley, Pennsylvania. The company engages in business of testing, researching, and reviewing consumer products. The company was formerly known as tronc, Inc. and changed its name to Tribune Publishing Company in October 2018. Tribune Publishing Company was founded in 2013 and is headquartered in Chicago, Illinois.

21. On February 16, 2021, Tribune and Alden jointly announced that they had entered into the Proposed Transaction:

> CHICAGO, Feb. 16, 2021 /PRNewswire/ -- Tribune Publishing Company (NASDAQ: TPCO) ("Tribune" or the "Company") and affiliates of Alden Global Capital ("Alden") today announced that they have entered into a definitive merger agreement under which Alden will acquire all of the outstanding shares of Tribune common stock not currently owned by Alden for $17.25 per share in cash. Alden currently owns 11,554,306 shares of Tribune common stock, representing 31.6% of the Company's outstanding shares.
>
> The purchase price represents a premium of 45% to the closing price of Tribune common stock on December 11, 2020, the last trading day prior to receiving Alden's proposal, a premium of approximately 35% to the closing price of Tribune common stock on December 30, 2020, the last trading day prior to public disclosure of Alden's proposal, and a 21% increase from Alden's initial offer of $14.25 per share. The definitive agreement was approved by Tribune's Board of Directors following the recommendation by the special committee of Tribune's Board formed to evaluate Alden's proposal and potential alternatives.
>
> Philip G. Franklin, Chairman of the Board and a member of the special committee, said, "Over the past year, the Company has taken a number of actions to adapt to an ever-changing business and industry environment, including the impact of COVID-19. These actions included strengthening the Company's financial position, driving digital growth and investing in high-quality content to better serve customers, employees and communities. This positioning enabled the special committee to negotiate a premium, all-cash price, which the committee concluded was superior to the available alternatives."
>
> Concurrent with the signing of the merger agreement, Alden has signed a non-binding term sheet to sell The Baltimore Sun to Sunlight for All Institute, a public charity formed by Stewart Bainum Jr.
>
> **Approvals and Timing**

The transaction is expected to close in the second quarter of 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, the approval of holders of two-thirds of Tribune common stock not owned by Alden, as well as other customary closing conditions.

Upon completion of the transaction, Tribune will become a privately held company, and its common stock will no longer be listed on any public market.

**Advisors**
Moelis & Company LLC is serving as exclusive financial advisor to Alden Global Capital, and Akin Gump Strauss Hauer & Feld LLP is serving as legal advisor. Lazard is serving as financial advisor to the special committee of the Board of Directors of Tribune, and Davis Polk & Wardwell LLP is serving as the special committee's legal advisor.

* * *

22. The Board has unanimously approved the Proposed Transaction. It is therefore imperative that Tribune' stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

B.   **The Materially Incomplete and Misleading Proxy Statement**

23. On April 27, 2021, Tribune filed the Proxy Statement with the SEC in connection with the Proposed Transaction. The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Company Projections*

24. The Proxy Statement fails to provide material information concerning financial projections by Tribune management and relied upon by Lazard and the Board in their analysis and deliberation. The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading. The Proxy Statement indicates that in connection with the rendering of its fairness opinion, that the Company prepared certain non-public financial forecasts (the "Company Projections") and provided them to the Board and the financial advisors with forming a view about the stand-alone valuation of the Company. Accordingly, the Proxy Statement should have, but fails to provide, certain information in the projections that Tribune management provided to the Board and the financial advisors. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007).

25. For the Company Projections, including the 2021 Strategic Plan, Updated 2021 Strategic Plan, and Case Projections for 2022-2023, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics and/or a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

26. When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not

misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

27. The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

28. Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measure to the most comparable GAAP measure to make the non-GAAP metrics included in the Proxy Statement not misleading.

*Omissions and/or Material Misrepresentations Concerning Lazard's Financial Analysis*

29. With respect to Lazard's *Selected Precedent Transactions Multiples Analysis*, the Proxy Statement fails to disclose: (i) the closing dates of each selected transaction; and (ii) the values of each selected transaction.

30. With respect to Lazard's *Discounted Cash Flow Analysis – Specified Case*, as well as for *Cases A, B and C*, the Proxy Statement also fails to disclose: (i) the estimated terminal value

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

8

for the Company; (ii) the estimated future cash flows for fiscal years ending 2021, 2022, and 2023; (iii) the inputs and assumptions underlying the range of discount rates from 9.0% to 11.0%; (v) the Company's weighted cost of capital; (vi) the inputs and assumptions underlying the use of various exit Adjusted EBITDA multiples ranging from 3.0x to 5.0x; (vii) the present value of pension liabilities and adjusted expenses at the terminal value date; and (viii) the Company's net debt.

31.     With respect to Lazard's *Research Analyst Price Targets*, the Proxy Statement fails to disclose (i) the price targets observed by Lazard in the analysis; and (ii) the sources thereof.

32.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of  
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

33.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

34.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

35. Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, financial analysis that were prepared by Lazard and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

36. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

37. Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement. The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully. Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

38. The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

39. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40. The Individual Defendants acted as controlling persons of Tribune within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as directors of Tribune, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Tribune, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

41. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

42. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tribune, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy Statement at issue contains

the unanimous recommendation of the Board to approve the Proposed Transaction. The Individual Defendants were thus directly involved in the making of the Proxy Statement.

43. In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

44. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

45. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A. Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: April 28, 2021

**MELWANI & CHAN LLP**

By: /s *Gloria Kui Melwani*
Gloria Kui Melwani (GM5661)
1180 Avenue of the Americas, 8th Fl.
New York, NY 10036
Telephone: (212) 382-4620
Email: gloria@melwanichan.com

*Attorneys for Plaintiff*